**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lilian Kavrah,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-21-01943-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Lilian Kavrah's appeal from the Social Security Commissioner's denial of Supplemental Security Income ("SSI") disability insurance benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (Doc. 1). The appeal is fully briefed (Docs. 12; 17; 18). The Court now rules.

**I.   BACKGROUND**

Plaintiff filed an application for SSI benefits in September of 2017, primarily alleging back and limb pain and migraines. (Doc. 11-4 at 20). Plaintiff's application was denied at the initial stage, upon reconsideration, and by an administrative law judge ("ALJ") after a hearing. (Docs. 11-3 at 30; 11-4 at 32, 47). After reconsideration but before the hearing, Plaintiff was diagnosed with moderate dementia. (*Compare* Doc. 11-3 at 38, *with* Doc. 11-4 at 33, 47, *and* Doc. 11-10 at 99–100).

The Social Security Administration ("SSA") Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Doc. 11-3 at 2). Plaintiff then timely filed this action seeking review of the Commissioner's final decision under 42 U.S.C. § 405(g).

**a. The Disability Determination Process**

To be eligible for SSI benefits a person's income and resources must not exceed a specified amount and she must be an "aged, blind, or disabled individual." *See* 42 U.S.C. § 1382(a). An adult is a "aged, blind, or disabled individual" if, among other requirements, she is disabled, meaning she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *See id.* § 1382c(a)(3)(A), (C). The SSA has created a five-step process for an ALJ to determine whether an adult claimant is disabled. 20 C.F.R. § 416.920(a)(1). Each step is potentially dispositive. *See id.* § 416.920(a)(4).

At step one the claimant is not disabled if she is doing substantial gainful activity. *Id.* § 416.920(a)(4)(i). At step two the claimant is not disabled if she does not have a "severe impairment," i.e., "any impairment or combination of impairments which significantly limits . . . physical or mental ability to do basic work activities." *Id.* § 416.920(a)(4)(ii), (c). At step three the claimant is disabled (and entitled to benefits) if her impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See id.* § 416.920(a)(4)(iii).

If not, the ALJ will determine the claimant's "residual functional capacity" ("RFC") by considering "all the relevant evidence" including impairments, "any related symptoms," and resulting "physical and mental limitations" to determine "the most [the claimant] can do despite [her] limitations." *Compare id.* § 416.920(a)(4), *with id.* § 416.945(a)(1). At step four the claimant is not disabled if, considering the RFC and the physical and mental demands of the claimant's past relevant work, she can still perform such work. *Id.* § 416.920(a)(4)(iv), (f). If the claimant cannot perform (or does not have) past work, at step five the claimant is not disabled if, considering her RFC, "age, education, and work experience," she can adjust to other work that exists "in significant numbers in the national economy." *Compare id.* § 416.920(a)(4)(v), (g)(1), *with id.* § 416.960(c). But if the ALJ finds the claimant cannot adjust to other work, she is disabled. *See id.* § 416.920(a)(4)(v).

### b. The ALJ's Findings

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (Doc. 11-3 at 18). At step two the ALJ found that Plaintiff's impairments, including migraine headaches and dementia, were severe in combination. (*Id.* at 18–19). At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id.* at 19–22).

The ALJ then found that Plaintiff had the RFC to perform light work, with some limitations. (*Id.* at 22–28). For example, the ALJ partly discredited Plaintiff's testimony regarding the severity of her migraines, finding that they supported only a "need to avoid concentrated exposure to loud noise environments and pulmonary irritants, including fumes, odors, dust, gases, and poor ventilation." (*Id.* at 23–24). The ALJ also partly discounted Plaintiff's dementia diagnosis and Plaintiff's own testimony regarding her dementia symptoms, finding that Plaintiff's dementia limited her only to "simple, unskilled work consisting of understanding, remembering, and carrying out simple instructions and performing simple, routine, repetitive tasks," as well as limited coworker interaction and no crowd contact. (*Id.* at 24–26, 28).

At step four the ALJ found that Plaintiff had no past relevant work. *Id.* at 28. At step five the ALJ found that Plaintiff could adjust to other work that exists in significant numbers in the national economy, based on a vocational expert's ("VE") testimony that a person of Plaintiff's age, education, work experience, and RFC could perform the work of a housekeeping cleaner or electrical accessory assembler. (*Id.* at 29–30). As a result, the ALJ found Plaintiff not disabled.

## II.   LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)

(citation omitted). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). But by the same token the Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

**III.     ANALYSIS**

Plaintiff argues that the ALJ erred both in partly discounting the medical opinion of Plaintiff's clinical neuropsychologist and in partly discrediting Plaintiff's testimony regarding the severity of her dementia and migraine symptoms. Defendant argues that the ALJ articulated legally sufficient reasons supported by substantial evidence for both findings. The Court takes each issue in turn.

**a.  Subjective Symptom Testimony**

Plaintiff argues that the ALJ failed to adequately support his decision to discount Plaintiff's testimony regarding the severity of her symptoms. To discredit subjective symptom testimony an ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036–37 (9th Cir. 2007) (cleaned up). Once a Plaintiff satisfies this test, provided there is "no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (cleaned up).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, and did not make a finding that she was malingering. (Doc. 11-3 at 26). But the ALJ concluded that Plaintiff's statements regarding the severity of her symptoms were "not entirely consistent" with other evidence in the record and had therefore "been found to affect the [Plaintiff's] ability to work only to the extent they [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.*). Essentially, the ALJ indicated that he accepted each of Plaintiff's statements regarding her symptoms except those statements which he found to be inconsistent with the record.

Because the ALJ did not make a finding that Plaintiff was malingering, the Court must determine whether the ALJ gave specific, clear, and convincing reasons for partly discrediting Plaintiff's symptom testimony. An adverse credibility finding is sufficiently specific if the ALJ identifies "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). In assessing credibility an ALJ may consider, among other factors, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1163 (citations omitted). Using "ordinary techniques of credibility evaluation" an ALJ may "discredit the claimant's allegations" so long as the ALJ "makes specific findings that are supported by the record." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (cleaned up).

The Court will consider in turn the ALJ's findings regarding Plaintiff's migraine and dementia symptom testimony.

i. ***Migraine Testimony***

Regarding her migraines, Plaintiff testified that despite taking medicine she experienced migraines once or twice per month, and that during a migraine she would

become dizzy and nauseous, need to vomit, and be unable to move. (Doc. 11-3 at 45, 47). She also stated that to deal with her migraines she would either go to the hospital for treatment or take medicine and lie down at home with the lights off. (*Id.* at 55). In the latter scenario her migraine would last the entire day or up to three days if she could not get any sleep. (*Id.*).

The ALJ first found that Plaintiff's statement that she could not move was inconsistent with a note from a medical appointment stating that Plaintiff was "[f]eeling generally well, migraine present," the day after she had been treated in an emergency room for her migraine. (*Id.* at 25; Doc. 11-9 at 92). The Court finds that the ALJ properly discredited Plaintiff's statement that she cannot move during migraines. It would be unusual for a person who cannot move due to pain, dizziness, or nausea to tell a healthcare provider that she feels generally well. Further, that Plaintiff traveled to a medical clinic suggests that she may be able to move while experiencing a migraine. This a specific, clear and convincing reason to find the statement not credible.

Plaintiff argues that Plaintiff's statement that she felt generally well was not inconsistent with her testimony that she had to lie down while having a migraine, as Plaintiff might experience migraines of varying severities, some of which might not require her to lie down.[1] First, this argument misses the mark because the ALJ discredited Plaintiff's testimony that she could not move while having a migraine, not her testimony that she had to lie down. (*See* Doc. 11-3 at 25, 47, 55). Second, while Plaintiff's explanation of how her testimony might be consistent is, considering the underlying evidence, reasonable, the ALJ's finding that her testimony is inconsistent is also reasonable. Where the evidence admits of more than one rational interpretation this Court must uphold the ALJ's findings.

---

[1] Plaintiff also argues that the statement cannot be used a reason to discredit her symptom testimony because the cited note was made more than a year prior to her alleged onset of disability. But Plaintiff cites no authority in support of this proposition, and the Court has found none. Because Plaintiff does not argue that her migraines worsened in the intervening year, her past actions and statements remain relevant. *Cf. Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989); *and see Leitner v. Comm'r Soc. Sec. Admin.*, 361 F. App'x 876, 878 (9th Cir. 2010).

Next, the ALJ found that Plaintiff's testimony regarding her migraine severity was inconsistent with the record because "treatment has been generally successful in controlling the claimant's symptoms." The ALJ drew this conclusion from what he characterized as Plaintiff's admission "that medication helped her headaches at times." (*Id.* at 25). It appears that the ALJ is referring to Plaintiff's testimony that "sometimes [she] takes [her medication]" but "it doesn't work," after which she must either visit the hospital or lie down with the lights off for one to three days. (*See id.* at 25, 54–55). There is no apparent inconsistency between Plaintiff's statement that her medicine does not work and the ALJ's inference that sometimes her medicine does work: each proposition is the logical counterpart of the other. And while these propositions would support a conclusion that treatment is sometimes successful in controlling Plaintiff's symptoms, they provide no support for the ALJ's conclusion that such treatment is *generally* successful.

A treatment that sometimes works—or even one which usually does—may still leave Plaintiff with disabling migraines once or twice per month. This is therefore not a convincing reason to discount Plaintiff's symptom testimony regarding the severity of her migraine symptoms.

The ALJ's last observation that could be interpreted as a reason for discrediting Plaintiff's migraine testimony was that she had "not been entirely compliant in taking prescribed medications." (*Id.* at 25). As noted, an "inadequately explained[] failure to . . . follow a prescribed course of treatment" may indeed be a clear and convincing reason to discredit a claimant's testimony regarding the severity of her symptoms. *Fair*, 885 F.2d at 603–04. The inference that may be made in such situations is that symptoms which are not severe enough to motivate a claimant to seek or comply with treatment are unlikely to be severe enough to be disabling. *Id.* at 604.

But the ALJ did not cite evidence indicating that Plaintiff failed to take medication for migraines (or for dementia), pointing only to a psychological report from 2016 stating that Plaintiff admitted to taking Zoloft as needed rather than daily. (Docs. 11-3 at 25; 11-9 at 20). It appears from the record that Plaintiff was prescribed Zoloft to treat her depression.

(Doc. 11-9 at 23). While Plaintiff's failure to correctly take Zoloft could perhaps be a clear and convincing reason to doubt Plaintiff's testimony regarding the severity of her depression,[2] it is certainly no reason to doubt Plaintiff's credibility regarding the severity of symptoms which it was not prescribed to treat. It is therefore not a clear or convincing reason to doubt Plaintiff's testimony regarding the severity of her migraines.

In sum, the ALJ gave a specific, clear, and convincing reason to discredit only Plaintiff's statement that she could not move when she was experiencing a migraine.[3] It may also be that the ALJ privately discredited Plaintiff's testimony that she must lie down during migraines, or that she becomes dizzy and nauseous during migraines, or even that she experiences migraines at all. But the ALJ did not specifically identify these claims as incredible or explain what evidence in the record was inconsistent with them. And because the ALJ found Plaintiff partly credible by accepting her claims "to the extent they can reasonably be accepted as consistent with" the record, the Court is unable either to guess whether the ALJ credited or discredited these claims, or to assess the legitimacy of such a decision. Because the ALJ did not provide an explanation specific enough to permit this Court to determine whether the ALJ "rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [Plaintiff's] testimony," this Court is unable to affirm the ALJ's decision. *Cf. Brown-Hunter v. Colvin*, 806 F.3d 487, 493–495 (9th Cir. 2015). The Court concludes that the ALJ erred in failing to adequately explain which migraine symptom claims he discredited and in failing to give a clear and convincing reason for discrediting them.

Nor is this error harmless. There is a logical gap between the ALJ's properly supported finding that Plaintiff cannot move during migraines and his ultimate

---

[2] *But see Garrison*, 759 F.3d at 1018 n.24 ("[W]e do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions.").

[3] Defendant argues that the ALJ also relied on "unremarkable" brain scans from 2016 and 2017 to partly discredit Plaintiff's migraine symptom testimony. (Doc. 17 at 4). But the ALJ mentioned the scans before noting that later scans showed a "cavernous malformation" and finding that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (Doc. 11-3 at 23–24, 26). Thus, the ALJ did not rely on the prior innocuous scans to support his decision.

- 8 -

determination that she was not disabled. After all, a person may be able to move but not be able to work. *Cf. Garrison*, 759 F.3d at 1016 ("[I]mpairments that would unquestionably preclude work . . . will often be consistent with doing more than merely resting in bed all day."); *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits."). Plaintiff testified that during severe migraines which occur one, two, or more times per month she must either lie down in the dark or go the hospital, and that such migraines last for one to three days. As discussed more fully below, the VE testified that a person with Plaintiff's characteristics who misses work once or twice per month would not be able to maintain employment. The testimony of the VE therefore suggests that, had the ALJ incorporated Plaintiff's un-discredited migraine limitation into his RFC or his hypothetical, he would likely have been obliged to find Plaintiff disabled.

ii. *Dementia Testimony*

Regarding her dementia, Plaintiff claimed at the hearing that she had short- and long-term memory problems and would forget to attend medical appointments or do tasks her daughter had asked her to do. (Doc. 11-3 at 56–57). She also claimed that she could not focus when watching a one-hour television show. (*Id.* at 58–59). And on an "Exertional Daily Activities Questionnaire" Plaintiff stated that on an average day she did "[n]othing." (Doc. 11-8 at 15). The ALJ gave two reasons for partly discrediting Plaintiff's dementia symptom testimony.

One reason was that Plaintiff's "allegations regarding the severity of her symptoms were not consistent with her activity level." (*Id.* at 25). Plaintiff testified (and the ALJ recounted) that she was independently able to feed and dress herself, go to the bathroom, use Facebook, take pictures on her phone, and take taxis her daughter called for her. (*Id.* at 25, 47, 52). Plaintiff also testified that, accompanied by family members, she went to church, visited her in-laws, went shopping, and once flew to Germany to visit family. (*Id.* at 43, 50). Plaintiff further testified that when her daughter would ask her to prepare food

or lay out clothes for her, she would sometimes forget to do it and need to be reminded. (*Id.* at 56).

Initially, it is plain that, as the ALJ found, doing daily activities at all is inconsistent with Plaintiff's allegation that she does nothing on an average day—and inconsistent also with the close implication that she *can* do nothing.

The ALJ also observed that "some of the physical and mental abilities and social interactions required in order to perform these activities are inconsistent with the presence of an incapacitating or debilitating condition." (*Id.* at 25). This is a clear and convincing reason supported by substantial evidence to partly discredit Plaintiff's claims regarding the severity of her dementia symptoms. Plaintiff's testimony that she is sometimes able to remember to prepare food and lay out clothes for her daughter is inconsistent with her claim of incapacity, but consistent with the ALJ's finding that she retains the ability to understand, remember, and carry out simple instructions. Similarly, Plaintiff's testimony that she can take care of herself independently during the day is more consistent with the ALJ's determination that she can "perform simple, routine, repetitive tasks" than it is with Plaintiff's claim that she is disabled. And Plaintiff's testimony suggesting that she was able to learn and remember how to use Facebook and to take pictures with her phone is inconsistent with her testimony that she has short- and long-term memory problems. Thus, the ALJ did not err in finding Plaintiff's daily activities inconsistent with her claimed symptom severity.[4]

The ALJ also noted that Plaintiff "responded well and easily to questioning" at the administrative hearing, which he suggested was inconsistent with her allegations regarding the severity of her impairments. The ALJ's finding that Plaintiff "responded well and easily

---

[4] Plaintiff argues that the ALJ did not give a legally sufficient reason for discrediting the severity of Plaintiff's symptoms because he found neither that Plaintiff was "able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," nor that any particular daily activity was "incompatible with the severity of symptoms alleged." *Ghanim*, 763 F.3d at 1165 (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004)). But, as discussed, the ALJ's discussion showed that Plaintiff's daily activities were incompatible with the severity of her symptoms, satisfying the latter standard.

- 10 -

to questioning" is a specific finding supported by the record. The transcript of the hearing shows that Plaintiff was able to understand the ALJ's questions, remember them long enough to formulate an answer, and respond to them appropriately with relevant information. Thus, that Plaintiff responded well and easily to questioning at the hearing conflicts with her testimony that she has short-term memory problems. Additionally, the transcript shows that the hearing lasted for more than one hour, and Plaintiff's testimony takes up 18 of 28 pages of the transcript. (Doc. 11-3 at 38, 66). That Plaintiff was able to respond easily and well to questions for a substantial portion of this time period undercuts her testimony that she cannot focus on a one-hour television program.

Plaintiff argues that the ALJ's observation at the hearing cannot support his credibility finding. (Doc. 12 at 20) (citing *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (holding that an ALJ's personal observation that a claimant did not exhibit pain at a hearing does not support denial of benefits where objective evidence supports claimant's claims); *Gallant*, 753 F.3d at 1455 (same)). But an ALJ's personal observations may, in combination with other evidence, serve as adequate support for an ALJ's determination. *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600, 602–03 (9th Cir. 1999); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). "The inclusion of the ALJ's personal observations does not render the decision improper." *Nyman*, 779 F.2d at 531.

The Court finds that the ALJ gave clear and convincing reasons supported by substantial evidence to partly discredit Plaintiff's testimony regarding the severity of her dementia symptoms.

**b. Medical Opinion**

Plaintiff also argues that had the ALJ fully credited Dr. Higgins's opinion and correctly incorporated its findings into Plaintiff's RFC, the ALJ would have been obliged to find Plaintiff disabled, and that the ALJ erred in failing to do so. For applications (like Plaintiff's) filed on or after March 27, 2017, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation

supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). In providing this explanation, the ALJ must articulate how he considered the supportability of that medical opinion and its consistency with other evidence in the record. *See id.* (citing 20 C.F.R. § 404.1520c(b)(2)); 20 C.F.R. § 416.920(b)(2), (c)(1)–(2).

Dr. Higgins, Plaintiff's neuropsychologist, opined in relevant part that Plaintiff had moderate dementia, "characterized by fluctuating attention/arousal and decreased speed of information processing, as well as poor initiation and diminished memory (i.e., very rapid forgetting)," and noted that she "exhibited classic dementia" memory errors. (Docs. 11-1 at 111–12; 11-9 at 176). He opined that Plaintiff's memory deficits were "characterized by poor working memory, deficient recent or short-term memory, poor learning and encoding, and deteriorating distant memory." (Doc. 11-1 at 112). He further assessed Plaintiff as being "moderately . . . to . . . severely impaired" in several other neurocognitive areas, including "reading, writing, visual organization, processing speed, attention, calculation, comprehension, . . . arithmetic, speech production, visual planning and conceptualization, . . . verbal reasoning, visual reasoning, [and] visuomotor functioning." (*Id.*). He also emphasized that Plaintiff "does not have the mental or cognitive capacity to learn, . . . as she cannot retain new information," and stated that because Plaintiff's condition is neurodegenerative it "will only worsen," and "[s]he will never recover." (Doc. 11-9 at 177).

The ALJ summarized Dr. Higgins's opinion as having found that Plaintiff "had an inability to learn new information or to recall previously learned information; poor attention, concentration, and focus; difficulty expressing herself and understanding complex ideas; and inability to make complicated decisions for herself." (Doc. 11-3 at 28). He found that Dr. Higgins's opinion was supported by his own findings, but that it was "not entirely consistent with the claimant's admitted activities, including the ability to function alone and independently while her husband and [adult] children are away at work." (*Id.*). The ALJ therefore found Dr. Higgins's opinion "persuasive in part." (*Id.*).

The ALJ's explanation of why he partly rejected Dr. Higgins's opinion is supported by substantial evidence. The ALJ's reference to "admitted activities" refers clearly enough

to the activities to which Plaintiff admitted during the hearing and which the ALJ listed in discussing Plaintiff's symptom testimony. These activities are inconsistent with the severity of Dr. Higgins's diagnosis. As discussed, learning and remembering how to use Facebook and take pictures on a phone is inconsistent with being unable to learn or remember new information. Further, functioning independently during the day will often require plaintiff to make decisions for herself, which also undercuts Dr. Higgins's findings. But the clearest contradiction is between Dr. Higgins's finding that Plaintiff is unable to recall previously learned information and her professed ability to prepare food, use the toilet by herself, and to remember her daily activities well enough to testify to them coherently at an adjudicatory hearing. It may be possible, as indeed Plaintiff argues, to explain away these apparent inconsistencies by resolving conflicts and drawing inferences differently than the ALJ did. But the ALJ is entitled to draw his own logical inferences from and resolve conflicts in the evidence, and the determinations he made here were reasonable. Substantial evidence supports the ALJ's decision, and this Court must defer to it.

Plaintiff argues that the ALJ failed to properly consider Dr. Higgins's opinion using the factors listed in 20 C.F.R. § 416.920c(c)(1)–(5). But the ALJ stated that he "considered the medical opinion(s) . . . in accordance with 20 CFR 416.920c." *Id.* at 22. And, as noted, the ALJ did explain how he considered the supportability and consistency factors for Dr. Higgins's opinion. While there are three factors the ALJ did not discuss, SSA regulations do not require him to discuss them. 20 C.F.R. § 416.920c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section . . . .").

The Court finds that substantial evidence supports the ALJ's assessment of Dr. Higgins's opinion as persuasive in part.

c. **Remedy**

Because the ALJ did not adequately explain or support his decision to partly discredit Plaintiff's migraine symptom testimony, it is unclear whether the ALJ took into

1   account all of Plaintiff's limitations, and his RFC determination is therefore potentially
2   flawed. To the extent the RFC was flawed, the hypothetical question the ALJ asked the VE
3   was incomplete. *See Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). The ALJ therefore
4   did not meet his burden at step five "to demonstrate that the claimant is not disabled and
5   can engage in work that exists in significant numbers in the national economy." *Id.* at 1161
6   (citation omitted).

7   The usual remedy where the record does not support an ALJ's decision is "remand
8   to the agency for additional investigation or explanation." *Id.* at 1162 (citation omitted).
9   But courts have discretion to remand with directions to calculate and award benefits where:
10  "(1) the record has been fully developed and further administrative proceedings would
11  serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for
12  rejecting evidence, whether claimant testimony or medical opinion; and (3) if the
13  improperly discredited evidence were credited as true, the ALJ would be required to find
14  the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted). Even
15  where each of these conditions is met, courts retain flexibility to remand for further
16  proceedings where "an evaluation of the record as a whole creates serious doubt that a
17  claimant is, in fact, disabled." *Id.* at 1021.

18  The Court finds that the conditions for remanding for entry of benefits are not met.
19  First, despite the ALJ's failure to provide legally sufficient reasons for rejecting evidence,
20  further administrative proceedings could serve some purpose. Although, as noted, the
21  ALJ's sole example of a medication Plaintiff failed to take was Zoloft, and the record
22  suggests that she was prescribed Zoloft to treat her depression, the Court is aware that
23  Zoloft is sometimes prescribed to prevent migraines.[5] If further proceedings reveal that
24  Plaintiff was prescribed Zoloft to prevent migraines, her failure to properly take it could be
25  evidence that her symptoms are not as severe as she claims.

26  Second, it is not clear that the ALJ would be required to find the claimant disabled
27  on remand even if he considered additional limitations from improperly discredited

---

[5] *See, e.g.*, Stephen Landy et al., *Selective Serotonin Reuptake Inhibitors for Migraine Prophylaxis*, 39 Headache 28 (1999).

- 14 -

evidence because the VE's testimony did not directly address those limitations. The ALJ asked the VE whether there would be performable work for a person of Plaintiff's age, education, and work experience who was limited to, among other things, light exertion and carrying out simple instructions. (Doc. 11-3 at 60–63). The VE responded that such a person could perform the work of a housekeeping cleaner or an electrical accessories assembler. (*Id.*). Later, in response to a question from Plaintiff's attorney, the VE stated that a person who "averages one to two days per month absenteeism due to" migraines "probably would not be able to maintain employment." (*Id.* at 63). This testimony suggests, but does not definitively establish, that if Plaintiff's migraine symptom testimony were fully credited Plaintiff would be entitled to benefits.

Plaintiff testified that she suffered one to two migraines per month, which lasted from one to three days. This information is not sufficiently precise to allow this Court to determine, on average, how many days per month Plaintiff suffers from migraines. It is possible that more than one migraine per month or a migraine lasting more than one day are highly unusual occurrences. If this were true, and assuming Plaintiff would have the standard two days off per week, her average absenteeism due to migraines could well be below one day per month. For example, if Plaintiff experiences one day of debilitating migraines per month on average—which is within the range of one to two migraines lasting one to three days each—she would miss only 0.71 days of work per month on average. Consequently, the VE's testimony that a person who missed one to two days of work per month would not be able to maintain employment does not show that Plaintiff would not be able to maintain employment.

Thus, the VE's testimony does not squarely address Plaintiff's migraine-related limitations, and consequently does not show that the ALJ would be obliged on remand to find Plaintiff disabled. "In cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the proper remedy is remand "for further proceedings rather than payment of benefits." *Hill*, 698 F.3d at 1162–63 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000)).

Because there remain "outstanding issues that must be resolved before a determination of disability can be made," the Court will "remand [the case] to the agency for additional investigation or explanation." *See Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1105–1107 (9th Cir. 2014) (quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004); *Fla. Power & Light v. Lorion*, 470 U.S. 729, 744 (1985)).

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Commissioner's decision is vacated, and the case is remanded for further proceedings consistent with this order. The Clerk of the Court shall enter judgment accordingly.

Dated this 27th day of February, 2023.

James A. Teilborg
Senior United States District Judge